## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| **MAURICE E. STORKS,** | |
| **Plaintiff,** | **CIVIL ACTION FILE** |
| **v.** | **NO. 4:20-CV-268-MHC** |
| **FLOYD CO OFFICER MISTY PLEDGER, Individually and as a Floyd County Police Officer, and JOHN DOES (1-3), Officers Unknown to the Plaintiff at this time,** | |
| **Defendants.** | |

## <u>ORDER</u>

This case comes before the Court on Defendant Misty Pledger ("Pledger")'s

Motion for Summary Judgment [Doc. 20].

## I.    BACKGROUND[1]

---

[1] At the outset, the Court notes that as this case is before it on Pledger's Motion for Summary Judgment, the Court views the evidence presented by the parties in the light most favorable to Plaintiff Maurice E. Storks ("Storks") and has drawn all justifiable inferences in favor of Storks.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Sunbeam TV Corp. v. Nielsen Media Rsch., Inc.</u>, 711 F.3d 1264, 1270 (11th Cir. 2013).  In addition, the Court has excluded assertions of facts that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number).  LR 56.1B(1), NDGa.  Further, the Court accepts as admitted

**A.      Factual History**

**1.      The Undercover Operations of the Floyd County Police Department With Respect to Child Predators and Pledger's Role**

The Floyd County Police Department's Internet Crimes Against Children Task Force (the "Task Force") performs undercover operations in an effort to identify potential child predators.  Pledger's SMF ¶ 4; Storks's Resp. to Pledger's SMF ¶ 4.  Agents create a profile on Facebook as part of their undercover operation.  Pledger's SMF ¶ 8; Storks's Resp. to Pledger's SMF ¶ 8.  Because the Task Force's protocol prohibits the agent from contacting the potential suspect first, the conversation always is required to be initiated by the potential predator. Pledger's SMF ¶ 9; Storks's Resp. to Pledger's SMF ¶ 9.  Agents are also prohibited from beginning any sexual talk, steering the conversation, or sending sexually explicit pictures to the suspect.  Pledger's SMF ¶¶ 10, 12-13; Storks's Resp. to Pledger's SMF ¶¶ 10, 12-13.  The agents are allowed to raise the level of what they say to the suspect based on what the suspect says to them (e.g., using profanity or sexually explicit words), and the agent is allowed to and will respond

_____

those facts in Pledger's Statement of Material Facts ("Pledger's SMF") [Doc. 20-1] which have not been controverted with citation to the relevant portions of the record.  See LR 56.1B(2), NDGa.; Pl.'s Resp. to Def. Pledger's Statement of Material Facts ("Storks's Resp. to Pledger's SMF") [Doc. 27-1].

if someone messages her on the undercover profile.  Pledger's SMF ¶¶ 11, 15;
Storks's Resp. to Pledger's SMF ¶¶ 11, 15.

At all times pertinent to this matter, Pledger was a Sergeant with the Floyd
County Police Department assigned to the Task Force.  Pledger's SMF ¶¶ 1-2;
Storks's Resp. to Pledger's SMF ¶¶ 1-2.  Pledger created a Facebook profile under
the name "Taylor Sims" as part of her undercover operation.  Pledger's SMF ¶¶ 8,
16; Storks's Resp. to Pledger's SMF ¶¶ 8, 16.  "Taylor Sims" was presented as a
14-year-old girl in an effort to identify predators seeking to do sexual things with
underage children.  Pledger's SMF ¶ 17; Storks's Resp. to Pledger's SMF ¶ 17.
"Taylor Sims's" profile picture was a photograph of Pledger with a Snapchat filter
to make Pledger look younger.  Pledger's SMF ¶¶ 18-19; Storks's Resp. to
Pledger's SMF ¶¶ 18-19.  Using this undercover Facebook Profile, Pledger made
five arrests between February and March of 2018, including the arrest of Storks.
Pledger's SMF ¶ 24; Storks's Resp. to Pledger's SMF ¶ 24.

### 2.    Contacts Between Storks and Pledger

Storks initiated contact with Pledger, and the two communicated via
Facebook messenger and text messages.  Dep. Tr. of Misty Pledger (March 26,
2021) ("Pledger Dep.") [Doc. 22] at 8.  Prior to the date of his arrest, Storks had
never met or seen Pledger.  Pledger's SMF ¶ 29; Storks's Resp. to Pledger's SMF

¶ 29.  Similarly, Pledger was not aware of Storks in any manner until he messaged her undercover Facebook page.  Pledger's SMF ¶ 28; Storks's Resp. to Pledger's SMF ¶ 28.

Pledger never told Storks she was an investigator with the Floyd County Police Department, and never identified herself as anything other than a 14-year old girl; on at least two occasions, Pledger told Storks she was 14-years-old. Pledger's SMF ¶ 55; Storks's Resp. to Pledger's SMF ¶ 55; Trial Tr. of <u>State of Georgia v. Maurice Eugene Storks</u>, No. 18-CR-00842-JFL00l, Floyd Super. Ct. at 45 ("Trial Tr.") [Doc. 20-7].  Storks testified at his trial that he knew he was communicating with an individual who was older than fourteen the entire time.  Trial Tr. at 111-13.  Yet, Storks never indicated on Facebook or via text message that he did not believe "Taylor Sims" was in fact a 14-year-old girl. Pledger's SMF ¶ 79; Storks's Resp. to Pledger's SMF ¶ 79.  <u>See also</u> Pledger Dep. at 32-33 ("[Storks] never told me that he did not believe, based on my picture, that I was 14.").

### a.    Facebook Communications

Storks exchanged messages with "Taylor Sims" over Facebook from February 20, 2018, to March 3, 2018.  <u>See</u> Pledger Dep. at 8-11, 41.  During those exchanges, he made several mentions of sexual activity including Storks asking

"Taylor Sims" "u want me to send you a picture of my dick?" as well as "U got to

tell me do u have some good pussy baby[.]"  Pledger's SMF ¶¶ 37, 41; Storks's

Resp. to Pledger's SMF ¶¶ 37, 41; Facebook message exchange between Maurice

Bstocks and "Taylor Sims" (Feb. 20, 2018, to March 3, 2018) ("Facebook

messages") [Doc. 24-1] at 19-20, 32.

> One Facebook exchange was as follows:
>
> [PLAINTIFF]: Baby, all my check wasn't much all I got was 140
> if u interested i will give u the whole thing if u do rite baby
>
> ["TAYLOR SIMS"]: what i got to do
>
> [PLAINTIFF]: Just let me look at u and let me play wit myself
> its not go ake long im a minute man baby. Lol
>
> I hope im not disrespect n u baby

Pledger's SMF ¶ 34; Storks's Resp. to Pledger's SMF ¶ 34; Facebook messages at

4-5.  Other exchanges went as follows:

> [PLAINTIFF]: I think ur scared can i video call u so u can c me
> masterbate just were something sexy.
>
> ["TAYLOR SIMS"]: I dont think this computer can do that
> can u get to park?

Pledger's SMF ¶ 36; Storks's Resp. to Pledger's SMF ¶ 36; Facebook messages at

9-10.

> [PLAINTIFF]: U got a ride tonight
> Try n to make sure now

["TAYLOR SIMS"]: no im 14 lol u got to come to me.

Pledger's SMF ¶ 42; Storks's Resp. to Pledger's SMF ¶ 42; Facebook messages

at 35.

[PLAINTIFF]: Do u want me to fuck eat or play wit myself

["TAYLOR SIMS"]: if you want to. i will let uill be ready for all of it then that what u want?

[PLAINTIFF]: Yea please i want to eat u till u cum i want to swallow every drop i swear i no it taste real good

Pledger's SMF ¶ 43; Storks's Resp. to Pledger's SMF ¶ 43; Facebook messages at

39.

Storks also sent the following comments to "Taylor Sims": "Let me look at

da pic u send me im look at it and masterbate imma hit u back[,]" and "I no ima

hit u back Let me do this[.] That nut was good I was picture n me fuck n u from

da back[.]" Pledger's SMF ¶¶ 39-40; Storks's Resp. to Pledger's SMF ¶¶ 39-40;

Facebook messages at 24-25. It is also undisputed that Storks sent Pledger a

picture of his erect penis. Pledger's SMF ¶ 38; Storks's Resp. to Pledger's SMF ¶

39; Facebook messages at 22-23.

### b.   Text Messages

On February 20, 2028, at 2:04:42 PM, Plaintiff sent "Taylor Sims" the

following text message: "U c want im say n now u 15 years old u a child u go play b for i will that what happen just yesterday young kid like u im help n out gave money to her first lil hoe ran off and call the police no money first im not mad i will find one older thank u beautiful u take care[.]" Pledger's SMF ¶ 44; Storks's Resp. to Pledger's SMF ¶ 44.

On February 20, 2018, at 3:31:00 PM, Plaintiff sent "Taylor Sims" the following text message: "Baby u is not old enough ok we cant b seen together u should understand okay baby[.]" Pledger's SMF ¶ 45; Storks's Resp. to Pledger's SMF ¶ 45.

On February 20, 2018, beginning at 3:44:03 PM, the following text message exchange occurred:

["TAYLOR SIMS"]: what we going to do all night

[PLAINTIFF]: Talk get to no eachother [sic] and eat u baby

["TAYLOR SIMS"]: eat me? lol what

[PLAINTIFF]: Yea u go let me baby

["TAYLOR SIMS"]: lol i never done it

[PLAINTIFF]: Baby u gonna love it i promise. U want to try it baby

["TAYLOR SIMS"]: yea i do

7

Pledger's SMF ¶ 46; Storks's Resp. to Pledger's SMF ¶ 46.  Plaintiff asked "Taylor Sims" to send him via Facebook Messenger or text message a "naked picture" of herself at least eight times.  Pledger's SMF ¶ 47; Storks's Resp. to Pledger's SMF ¶ 47.

### 3.    Storks's Arrest

"Taylor Sims" and Storks agreed to meet at Gilbreath Park.  Pledger's SMF ¶ 48; Storks's Resp. to Pledger's SMF ¶ 48.  Pledger had a takedown team of five officers in marked cars to effectuate the arrest, which occurred on March 3, 2018.  Pledger's SMF ¶¶ 29, 52-53; Storks's Resp. to Pledger's SMF ¶¶ 29, 52-53.  Storks was charged with pandering (O.C.G.A. § 16-6-12), criminal attempt to commit aggravated child molestation (O.C.G.A. §16-4-1 and O.C.G.A. § 16-6-4(c)), and use of a computer to entice a child (O.C.G.A. § 16-12-100.2).  Pledger's SMF ¶ 54; Storks's Resp. to Pledger's SMF ¶ 54; Statement of Criminal Charges [Doc. 24-3].

### B.    Procedural History

On April 20, 2018, Storks was indicted by a Floyd County Grand Jury on seven counts:  pandering, criminal attempt to commit aggravated child molestation, computer and electronic pornography and child exploitation – obscene internet

contact with a child, and four counts of sexual exploitation of children.  Pledger's SMF ¶ 68; Storks's Resp. to Pledger's SMF ¶ 68; Indictment, <u>State of Georgia v. Maurice Eugene Storks</u>, No. 18-CR-00842-JFL00l, Floyd Super. Ct. ("Indictment") [Doc. 20-7 at 200-206].  On September 13, 2018, the jury found Storks not guilty on all charges.  Pledger's SMF ¶ 77; Storks's Resp. to Pledger's SMF ¶ 77; Trial Tr. at 163-64.

Storks filed this lawsuit in the Superior Court of Floyd County on September 10, 2020, against Pledger both individually and in her capacity as a Floyd County Police Officer.[2]  Compl.  On November 19, 2020, Pledger removed this action to this Court.  Notice of Removal [Doc. 1].  The Complaint includes the following counts: Malicious Prosecution under 42 U.S.C. § 1983 (Count One); State Malicious Prosecution (Count Two); Intentional Infliction of Emotional Distress (Count Three); False Imprisonment (Count Four); and Fabricated Evidence pursuant to 42 U.S.C. § 1983 (Count Five).  Compl. ¶¶ 57-84.  Pledger now seeks summary judgment as to all counts.  Br. in Supp. of Def. Pledger's Mot. for Summ. Judgment ("Def.'s Mot.") [Doc. 20-2] at 25.

---

[2] The Complaint does not specify which counts are brought against Pledger in her individual capacity and which counts are brought against Pledger in her official capacity.  The Court therefore assumes that each count is in both capacities.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence demonstrating a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law.  Celotex, 477 U.S. at 324.  In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party.  Anderson, 477 U.S. at 255; see also Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th

Cir. 1999).  A fact is "material" only if it can affect the outcome of the lawsuit

under the governing legal principles.  Anderson, 477 U.S. at 248.  A factual dispute

is "genuine" if the evidence would permit a reasonable jury to return a verdict for

the nonmoving party.  Anderson, 477 U.S. at 248.  "If the record presents factual

issues, the court must not decide them; it must deny the motion and proceed to

trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party," summary

judgment for the moving party is proper.  Matsushita, 475 U.S. at 587.

## III.   DISCUSSION

### A.   Federal Claims Against Pledger in Her Individual Capacity

Storks asserts federal claims under 42 U.S.C. § 1983 against Officer Pledger

in her individual capacity based upon malicious prosecution (Count One), false

imprisonment (Count Four), and fabricated evidence (Count Five).  Compl. ¶¶ 57-

63; 75-77; 78-84.  Pledger argues that these claims are barred by qualified

immunity.  Def.'s Mot. at 3-20.

"Qualified immunity offers complete protection for individual public

officials performing discretionary functions 'insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known.'"  Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir.

2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To claim qualified immunity, a defendant must first show he was performing a discretionary function. Moreno v. Turner, 572 F. App'x 852, 855 (11th Cir. 2014) (citing Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009)).

There is no dispute that Pledger was acting in the scope of her discretionary authority in this case. Pl. Maurice Storks' Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [Doc. 27] at 25 ("The parties agree that Officer Pledger was acting within the scope of her discretionary authority when she arrested and prosecuted Plaintiff."); see also Cottam v. City of Wildwood, 750 F. App'x 791, 793 (11th Cir. 2018) (finding that the officer "was acting within the scope of his discretionary authority when he stopped and arrested" plaintiff); Riebsame v. Prince, 267 F. Supp. 2d 1225, 1237 (M.D. Fla. 2003) (finding that deputies were acting within their discretionary authority with regard to questioning witnesses, performing an arrest, and transporting to jail).

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing: "(1) the defendant violated a constitutional

right, and (2) the right was clearly established at the time of the alleged violation."
Kobayashi, 581 F.3d at 1308.  A constitutional right is clearly established "only if
its contours are 'sufficiently clear that a reasonable official would understand what
he is doing violates that right.'"  Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir.
2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  "When we
consider whether the law clearly established the relevant conduct as a
constitutional violation at the time that [the government official] engaged in the
challenged acts, we look for 'fair warning' to officers that the conduct at issue
violated a constitutional right." Jones v. Fransen, 857 F.3d 843, 851 (11th Cir.
2017) (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)).
There are three methods to show that the government official had fair warning:

> First, the plaintiffs may show that a materially similar case has already
> been decided.  Second, the plaintiffs can point to a broader, clearly
> established principle that should control the novel facts of the situation.
> Finally, the conduct involved in the case may so obviously violate the
> constitution that prior case law is unnecessary.  Under controlling law,
> the plaintiffs must carry their burden by looking to the law as
> interpreted at the time by the United States Supreme Court, the
> Eleventh Circuit, or the [relevant state supreme court].

Terrell v. Smith, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (citations, quotation
marks, and alterations omitted).

The first method "looks at the relevant case law at the time of the violation;
the right is clearly established if 'a concrete factual context [exists] so as to make it

obvious to a reasonable government actor that his actions violate federal law.'"

Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011) (alterations in

original) (quoting Hadley v. Gutierrez, 526 F.3d 1324, 1333 (11th Cir. 2008)).

While the facts of the case need not be identical, "the unlawfulness of the conduct

must be apparent from pre-existing law."  Coffin v. Brandau, 642 F.3d 999, 1013

(11th Cir. 2011); see also Gennusa v. Canova, 748 F.3d 1103, 1113 (11th Cir.

2014) (internal quotation marks omitted) ("We do not always require a case

directly on point before concluding that the law is clearly established, but existing

precedent must have placed the statutory or constitutional question beyond

debate.").

　　The second and third methods, known as "obvious clarity" cases, exist when

"case law is not needed" to demonstrate the unlawfulness of the conduct or where

the existing case law is so obvious that "every objectively reasonable government

official facing the circumstances would know that the official's conduct did violate

federal law when the official acted."  Vinyard v. Wilson, 311 F.3d 1340, 1350-51

(11th Cir. 2002).  Such cases are rare.  See, e.g., Santamorena v. Ga. Mil. Coll.,

147 F.3d 1337, 1340 n.6 (11th Cir. 1998) (noting that "these exceptional cases

rarely arise").

This Court applies Pledger's qualified immunity defense to each § 1983 claim separately.

### 1.    False Imprisonment Under § 1983 (Count Four)

In order to state a claim or false imprisonment under § 1983, a plaintiff must allege the elements of common law false imprisonment and a due process violation under the Fourteenth Amendment.  Campbell v. Johnson, 586 F.l3d 835, 840 (11th Cir. 2009).  The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the plaintiff's awareness of the confinement.  Id.  "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."  O.C.G.A. § 16-5-41(a).  The Due Process Clause of the Fourteenth Amendment includes the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release."  Campbell, 586 F.3d at 840  (citations omitted).

"Law enforcement violates a person's Fourth Amendment rights when it arrests him or her without probable cause, and a claim arises under § 1983."  Rushing v. Parker, 599 F.3d 1263, 1265 (11th Cir. 2010).  However, "probable cause constitutes an absolute bar to both state and § 1983 claims alleging false

arrest" and false imprisonment.  Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).

"For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances."  Wood v. Kessler, 323 F.3d 872, 878 (11th Cir. 2003) (internal punctuation and quotation marks and citation omitted).  "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Id. (internal quotation marks and citation omitted).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Jeanty v. City of Miami, 876 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012) (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)).

The absence of probable cause to arrest does not end the inquiry because "officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest."  Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (citation omitted); see also Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010) (citations omitted)

(holding that the test for establishing arguable probable cause is whether
"reasonable officers in the same circumstances and possessing the same knowledge
as the Defendants could have believed that probable cause existed to arrest
Plaintiff.").  "When the facts are not in dispute, whether probable cause existed is a
question of law, and summary judgment is appropriate."  Marx v. Gumbinner, 905
F.2d 1503, 1506 (11th Cir. 1990).  "Probable cause exists where the facts within
the collective knowledge of law enforcement officials, derived from reasonably
trustworthy information, are sufficient to cause a person of reasonable caution to
believe that a criminal offense has been or is being committed."  Brown v. City of
Huntsville, 608 F.3d 724, 734 (11th Cir. 2010).  To receive qualified immunity
when a plaintiff alleges an arrest in violation of the Fourth Amendment, an
arresting officer must show at least "arguable probable cause to believe that a
person is committing a particular public offense."  Redd v. City of Enterprise, 140
F.3d 1378, 1384 (11th Cir. 1998).  "In wrongful arrest cases, we have defined the
'clearly-established' prong [for purposes of applying qualified immunity] as an
'arguable probable cause' inquiry."  Moran v. Cameron, 362 F. App'x 88, 93 (11th
Cir. 2010).

Arguable probable cause is to be assessed "based on the information known to
[the] defendant[] at the pertinent times."  Shew v. Horvath, 2017 WL 4417592, at

17

*2 (11th Cir. Oct, 4, 2017).  The Court should ask whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff."  Grider, 618 F.3d at 1257 (citation omitted).  Because arguable probable cause looks to whether the arresting officer's actions were objectively reasonable, the officer's underlying intent or motivation is irrelevant.  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002).  This standard acknowledges that "law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable."  Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quotation marks and citation omitted, alterations accepted).  Whether an arresting officer possesses arguable probable cause depends on the elements of the alleged offense and the facts of the case. Skop v. City of Atlanta, 485 F.3d 1130, 1137-38 (11th Cir. 2007).

After review of the undisputed material facts in the record, the Court concludes there was at least arguable probable cause supporting each underlying charge against Storks.  First, there was arguable probable cause for a charge of pandering.  See Indictment at 200 (listing Count One).

> A person commits the offense of pandering when he or she solicits a
> person to perform an act of prostitution in his or her own behalf or in
> behalf of a third person or when he or she knowingly assembles persons
> at a fixed place for the purpose of being solicited by others to perform

an act of prostitution.

O.C.G.A § 16-6-12.  Storks solicited "Taylor Sims" to perform an act of prostitution supporting the count for pandering, evidenced by some of the very first messages Pledger received from Storks, where he offered money in exchange for sexual acts.  Pledger Dep. at 12-13.  One Facebook exchange was as follows:

> [PLAINTIFF]: Baby, all my check wasn't much all I got was 140 if u interested i will give u the whole thing if u do rite baby
>
> ["TAYLOR SIMS"]: what i got to do
>
> [PLAINTIFF]: Just let me look at u and let me play wit myself its not go ake long im a minuteman baby. Lol
>
> I hope im not disrespect n u baby

Pledger's SMF ¶ 34; Storks's Resp. to Pledger's SMF ¶ 34; Facebook messages at 4-5.

Next, there was arguable probable cause for criminal attempt to commit aggravated child molestation.  See Indictment at 201 (listing Count Two).  "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."  O.C.G.A. § 16-4-1.  "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."

O.C.G.A. § 16-6-4(c).  The undisputed evidence reveals that Storks arranged to travel and meet "Taylor Sims" at a location in Floyd County to engage in oral sex, and Storks did in fact travel to the park at the agreed upon night—thereby taking the requisite substantial step.  Pledger Dep. at 14.  One exchange related to the encounter at the park went as follows:

> [PLAINTIFF]: I think ur scared can i video call u so u can c me masterbate just were something sexy.
>
> ["TAYLOR SIMS"]: I dont think this computer can do that can u get to park?

Pledger's SMF ¶ 36; Storks's Resp. to Pledger's SMF ¶ 36; Facebook messages at 9-10.  It is undisputed that "Taylor Sims" and Storks agreed to meet at Gilbreath Park.  Pledger's SMF ¶ 48; Storks's Resp. to Pledger's SMF ¶ 48.  It is further undisputed that on the evening of March 3, 2018, Pledger did in fact arrest Storks at Gilbreath Park.  Pledger's SMF ¶¶ 29, 48, 53; Storks's Resp. to Pledger's SMF ¶¶ 29, 48, 53.  And one exchange related to oral sex went as follows:

> [PLAINTIFF]: Do u want me to fuck eat or play wit myself
>
> ["TAYLOR SIMS"]: if you want to. i will let uill be ready for all of it then that what u want?
>
> [PLAINTIFF]: Yea please i want to eat u till u cum i want to swallow every drop i swear i no it  taste real good

Pledger's SMF ¶ 43; Storks's Resp. to Pledger's SMF ¶ 43; Facebook messages at

39.  Thus, arguable probable cause for criminal attempt to commit aggravated child molestation therefore existed at the time of the arrest.[3]

Next, there is arguable probable cause for computer and electronic pornography and child exploitation – obscene internet contact with a child.  <u>See</u> Indictment at 202 (listing Count Three).  A person commits this offense if:

> he or she has contact with someone he or she knows to be a child or <u>with someone he or she believes to be a child</u> via a computer wireless service or Internet service, including, but not limited to, a local bulletin board service, Internet chat room, e-mail, or instant messaging service, and <u>the contact involves any matter containing explicit verbal descriptions or narrative accounts of sexually explicit nudity, sexual conduct, sexual excitement, or sadomasochistic abuse</u> that is intended

---

[3] Construing all facts in light most favorable to Storks and even assuming Storks did not believe that Pledger was a minor and knew she was an adult, Pledger's SMF ¶ 58; Storks's Resp. to Pledger's SMF ¶ 58, arguable probable cause still existed for Storks's arrest.  Pledger reasonably could have believed that probable caused existed in light of the information she possessed at the time of the communications, including the absence of any indication that Storks was aware that she was not a minor based upon the following: a message where Pledger first told Storks that she was almost 15, a message where Storks said, "you're too young," a the message where Storks asked if Pledger could come see him and she said, "no, I'm 15, I can't drive," indicated to Pledger that Storks believed Pledger was 14-years-old.  Pledger's SMF ¶ 78; Storks's Resp. to Pledger's SMF ¶ 78. Pledger's SMF ¶ 78; Storks's Resp. to Pledger's SMF ¶ 78.  <u>See also</u> <u>Montoute v. Carr</u>, 114 F.3d 181, 184 (11th Cir. 1997).  ("[T]he inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.").  This reasoning applies to Counts Three through Seven as well, which include statutes with similar language about someone he or she believes to be a child.

> to arouse or satisfy the sexual desire of either the child or the person, provided that no conviction shall be had for a violation of this subsection on the unsupported testimony of a child.

O.C.G.A § 16-12-100.2(e)(1) (emphasis added).  The undisputed facts reveal multiple messages sent to "Taylor Sims" with explicit verbal descriptions and narrative account of sexual activities.  One instance is the aforementioned offer to pay "Taylor Sims" if she would let Storks look at her while he played with himself.  Pledger's SMF ¶ 34; Storks's Resp. to Pledger's SMF ¶ 34; Facebook messages at 4-5.  Another involves Storks asking to video call "Taylor Sims" so she could see him masturbate.  Pledger's SMF ¶ 36; Storks's Resp. to Pledger's SMF ¶ 36; Facebook messages at 9-10.  Another is the fact that Storks sent Pledger a picture of his erect penis.  Pledger's SMF ¶ 38; Storks's Resp. to Pledger's SMF ¶ 38; Facebook messages at 22-23.  Furthermore, Storks sent the following comments to "Taylor Sims": "Let me look at da pic u send me im look at it and masterbate imma hit u back[,]" and "I no ima hit u back Let me do this[.] That nut was good I was picture n me fuck n u from da back[.]"  Pledger's SMF ¶¶ 39-40; Storks's Resp. to Pledger's SMF ¶¶ 39-40; Facebook messages at 24-25.  Arguable probable cause for this charge therefore existed at the time or the arrest.

The remaining four charges involve four different counts of sexual exploitation of children.  <u>See</u> Indictment at 203-206 (listing Counts Four - Seven).

> It shall be unlawful for any person intentionally or willfully to utilize a computer wireless service or Internet service, including, but not limited to, a local bulletin board service, Internet chat room, e-mail, instant messaging service, or other electronic device, to <u>seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice</u> a child, another person <u>believed by such person to be a child</u>, any person having custody or control of a child, or another person believed by such person to have custody or control of a child to commit any illegal act by, with, or against a child as described in Code Section 16-6-2, relating to the offense of sodomy or aggravated sodomy; Code Section 16-6-4, <u>relating to the offense of child molestation or aggravated child molestation</u>; Code Section 16-6-5, relating to the offense of enticing a <u>child for indecent purposes</u>; or Code Section 16-6-8, relating to the offense of public indecency, <u>or to engage in any conduct that by its nature is an unlawful sexual offense against a child</u>.

O.C.G.A § 16-12-100.2(d)(1) (emphasis added).

With respect to Count Four of the indictment, evidence includes the following exchange that shows Storks used his electronic device to lure "Taylor Sims" to a location so he could perform oral sex on her.

> [PLAINTIFF]: Do u want me to fuck eat or play wit myself

> ["TAYLOR SIMS"]: if you want to. i will let u ill be ready for all of it then that what u want?

> [PLAINTIFF]: Yea please i want to eat u till u cum i want to swallow every drop i swear i no it taste real good

Pledger's SMF ¶ 43; Storks's Resp. to Pledger's SMF ¶ 43; Facebook messages at

39.  Additionally, on February 20, 2018, beginning at 3:44:03 PM, the

following text message exchange occurred:

> ["TAYLOR SIMS"]: what we going to do all night
>
> [PLAINTIFF]:  Talk  get  to  no  eachother [sec] and eat u
> baby
>
> ["TAYLOR SIMS"]: eat me? lol what
>
> [PLAINTIFF]: Yea u go let  me baby
>
> ["TAYLOR SIMS"]: lol i never done it
>
> [PLAINTIFF]: Baby u gonna love it i promise. U wantto try it
> baby
>
> ["TAYLOR SIMS"]: yea i do

Pledger's SMF ¶ 46; Storks's Resp. to Pledger's SMF ¶ 46.  Therefore, arguable

probable cause existed for Count Four of sexual exploitation of children.

With respect to Count Five, evidence was Storks's use of his electronic

device to lure "Taylor Sims" to a location so that he could have sex with her, again

demonstrated through the Facebook message where Storks asked: "Do u want me

to fuck eat or play wit myself[.]"  Pledger's SMF ¶ 43; Storks's Resp. to

Pledger's SMF ¶ 43; Facebook messages at 39.

With respect to Count Six, there is evidence that Storks lured someone he believed to be a child to entice her for indecent purposes as described in O.C.GA. 16-6-5(a), which reads "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."  The specific evidence included Storks asking "Taylor Sims" to meet him so he could entice her to engage in oral sex, sexual intercourse, and watch him masturbate.  Pledger's SMF ¶ 43; Storks's Resp. to Pledger's SMF ¶ 43; Facebook messages at 39.

Finally, with respect to Count Seven, Storks lured "Taylor Sims" to a location so that he could commit statutory rape as described in O.C.G.A. 16-6-3. Pledger's SMF ¶ 43; Storks's Resp. to Pledger's SMF ¶ 43; Facebook messages at 39; see also O.C.G.A. 16-6-3(a) ("A person commits the offense of statutory rape when he or she engages in sexual intercourse with any person under the age of 16 years and not his or her spouse, provided that no conviction shall be had for this offense on the unsupported testimony of the victim.").  Evidence of this offense included Storks's use of his electronic device to lure "Taylor Sims" to the park to have sexual intercourse with her.  Pledger's SMF ¶ 43; Storks's Resp. to Pledger's SMF ¶ 43; Facebook messages at 39.

Storks cites Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), for the proposition that there was a lack of arguable probable cause, thereby suggesting Pledger violated his constitutional guarantee against unreasonable seizure. Pl.'s Resp. at 8-13. However, Ashcroft is inapposite as it involved the legality of a prohibition of visual depictions, photographs, films, videos, or computer-generated images or pictures, while the matter before this court involves the alleged conduct of Storks to "attempt to seduce, solicit, lure, or entice a child, another person believed by such person to be a child . . . to commit any illegal act . . . ." as defined by O.C.G.A. § 16-12-100.2. Ashcroft's conclusion that the First Amendment allows "virtual child pornography," which "depict[s] minors but were produced by means other than using real children, such as through the use of youthful-looking adults or computer-imaging technology," has no bearing on the legality of Storks's attempted enticement. Ashcroft, 535 U.S. at 234. The law is clearly established that "[t]he impossibility of completing the offense of child molestation because the targeted victim is not a minor cannot defeat a criminal attempt charge." Spivey v. State, 274 Ga. App. 834, 839 (2005); see also Smith v. State, 340 Ga. App. at 157, 463 (2017) ("And again, this Court, as authorized by OCGA § 16-4-4, has repeatedly upheld convictions for attempted child sex crimes when the alleged victim was actually a law-enforcement officer posing as a minor."). Moreover,

26

courts have also upheld convictions for sexual exploitation of children under

O.C.G.A. 16-12-100.2(d) where a deputy posed as a 14-year-old girl.  See, e.g.,

Brown v. State, 321 Ga. App. 798, 798 (2013).  Additionally, the very language of

O.C.G.A. 16-12-100.2(e)(1) includes "someone he or she believes to be a child."

And pandering is illegal regardless of whether or not a child victim is involved.

See O.C.G.A § 16-6-12 ("A person commits the offense of pandering when he or

she solicits a person to perform an act of prostitution in his or her own behalf or in

behalf of a third person or when he or she knowingly assembles persons at a fixed

place for the purpose of being solicited by others to perform an act of

prostitution.").  Thus, Ashcroft does not legalize the conduct alleged in Storks's

indictment.

Accordingly, Storks has failed to demonstrate that Pledger violated a

constitutional right, and qualified immunity therefore shields Pledger from the

false imprisonment claim.  The Court therefore **GRANTS** Pledger's Motion for

Summary Judgment as to Count Four against in her individual capacity.[4]

---

[4] The Court notes that "[i]t is unnecessary to address Defendant's argument that
Plaintiff's claims are barred by the statute of limitations in light her entitlement to
qualified immunity." Mathis v. Vizcarrondo, No. 8:17-CV-554-T-27TGW, 2018
WL 9440773, at *4 n.2 (M.D. Fla. Sept. 13, 2018), aff'd, 792 F. App'x 746 (11th
Cir. 2019).

### 2.    Malicious Prosecution Under § 1983 (Count One)

Pledger contends that Storks's claim for malicious prosecution pursuant to

§ 1983 also is barred by qualified immunity.  Def.'s Mot. at 5-16.

> To recover for malicious prosecution, a plaintiff must prove "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).  The common-law elements include "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003).

Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016).  "The presence of

probable cause defeats a claim of malicious prosecution." Id. at 1267; see also

Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008) ("Because lack of probable

case is a required element to prove a § 1983 claim for malicious prosecution in

violation of the Constitution, the existence of probable cause defeats the claim.").

Storks fails to demonstrate the requisite Fourth Amendment violation.

Storks's only suggestion of a Fourth Amendment violation is the lack of probable

cause.  Pl.'s Resp. at 23-25; accord  Fish v. Brown, 838 F.3d 1153, 1167 (11th Cir.

2016) ("An arrest is unreasonable and, therefore, violates the Fourth Amendment,

when it is not supported by probable cause.").  For all the reasons discussed the

previous section, Pledger had arguable probable cause for the underlying charges

against Storks.  The very case cited as support by Storks, Pl.'s Resp. at 25, found

that there was arguable probable cause and held that the claims for malicious

prosecution failed as a matter of law.  Pruitt v. Gillespie, No. CIV.A. 13-00640-

KD-M, 2015 WL 435031, at *12 (S.D. Ala. Feb. 3, 2015), aff'd, 625 F. App'x 374

(11th Cir. 2015) ("As detailed supra, at a minimum, arguable probable cause

existed for some of the offenses for which Pruitt was arrested.  Because Gillespie

had arguable probable cause to effect Pruitt's arrest, his claim for malicious

prosecution fails as a matter of law and Gillespie is shielded by immunity.").

Therefore, the Court **GRANTS** Pledger's Motion for Summary Judgment as

to Count One against her in her individual capacity.

### 3.    Fabricated Evidence Under § 1983 (Count Five)

"Fabricating evidence to secure an arrest is a constitutional violation."

Valdes v. Miami-Dade Cnty., No. 12-22426-CIV, 2016 WL 680816, at *4 (S.D.

Fla. Feb. 18, 2016).  However, "[Storks] did not produce any summary judgment

evidence showing that [Pledger] planted or fabricated evidence."  Rowe v. City of

Fort Lauderdale, 279 F.3d 1271, 1281 (11th Cir. 2002).  In fact, Storks makes no

mention at all of his fabricated evidence claim in his brief.  See Pl.'s Resp.[5]  The

---

[5] In a different section of his brief, Storks contends that Pledger "created criminal
charges that do not exist [within] her arrest records whereby she altered the very
child molestation statute by adding criminal attempt . . . ."  Pl.'s Resp. at 28.

Court instead finds the record demonstrates legitimate evidence relating to the

underlying charges in the indictment, for the reasons previously discussed.  This is

not a case where there are meritorious challenges to the legitimacy of the relevant

evidence.  See, e.g., Williams v. Miami-Dade Police Dep't, 297 F. App'x 941,

947-48 (11th Cir. 2008).  Consequently, qualified immunity shields Pledger, and

the Court **GRANTS** her Motion for Summary Judgment as to Count Five in her

individual capacity.  See Captain Jack's Crab Shack, Inc. v. Cooke, No. 1:16-cv-

02887-SCJ, 2021 WL 1305392, at *5 (N.D. Ga. Mar. 8, 2021) (finding that

"speculative and unsupported" allegations that the defendant fabricated evidence

do not survive an immunity defense); Charles v. Brajdic, 420 F. Supp. 3d 1319,

1323-24 (S.D. Fla. 2019) ("That is, law enforcement officials are accorded . . .

qualified immunity . . . when a § 1983 plaintiff's allegation is that, for example,

---

However, this is incorrect.  As discussed, O.C.G.A § 16-6-4(c) is the statute for
aggravated child molestation while O.C.G.A § 16-4-1 is the criminal attempt
statue.  The Statement of Criminal Charges [Doc. 27-5] reads "16-6-4(c)
aggravated child molestation – criminal attempt."  As Pledger correctly points out,
Storks ignores the criminal attempt statue of O.C.G.A. § 16-4-1.  Reply Br. in
Supp. of Def. Pledger's Mot. for Summ. J. ("Def.'s Reply") [Doc. 28] at 5-6.  It is
immaterial that Pledger provided the statue for aggravated child molestation rather
than criminal attempt statute given the inclusion of the word attempt.
Additionally, qualified immunity protects officers who make mistakes in good
faith.  Pruitt, 2015 WL 435031, at *9 (citations omitted).

apart from any direct grand-jury testimony, the officer falsified an affidavit or fabricated evidence.").

### B.   Federal Claims Against Pledger in Her Official Capacity

"It is well established that [42 U.S.C. §] 1983 itself creates no substantive rights; it merely provides a remedy for deprivations of federal rights established elsewhere." Wideman v. Shallowford Cmty. Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987) (citing City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985)).  To sustain a cause of action based on § 1983, a litigant must establish two elements: (1) that he suffered a deprivation of a right, privilege, or immunity protected by the U.S. Constitution or federal law, and (2) that the act or omission causing the deprivation was committed by a person acting under color of state law.  Livadas v. Bradshaw, 512 U.S. 107, 132 (1994); Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998).  "[S]ection 1983 imposes liability only 'for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.'"  Wideman, 826 F.2d at 1032 (quoting Baker v. McCollan, 443 U.S. 137, 146 (1979)).  Accordingly, "[i]n any § 1983 action, a court must determine 'whether the Plaintiff has been deprived of a right secured by the Constitution and laws of the United States.'"  Glenn v. Brumby, 663 F.3d 1312, 1315 (11th Cir.

2011) (quoting Baker, 443 U.S. at 146).  "Absent the existence of an underlying

constitutional right, no section 1983 claim will lie."  Wideman, 826 F.2d at 1032.

In addition, a suit against an official of the government in his or her official

capacity is deemed to be a suit against the entity that employs the official.  Ky. v.

Graham, 473 U.S. 159, 165-66 (1985); see also Mann v. Taser Int'l, Inc., 588 F.3d

1291, 1309 (11th Cir. 2009) (citing Brown v. Neumann, 188 F.3d 1289, 1290 (11th

Cir. 1999)).  Thus, Storks's suit against Officer Pledger in her official capacity is

the functional equivalent of suing Floyd County.  Salvato v. Miley, 790 F.3d 1286,

1295 (11th Cir. 2015).

Moreover, a plaintiff seeking to hold a local government such as Floyd

County liable under § 1983 cannot rely upon the theory of *respondeat superior*;

instead, liability must stem from the "execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly

be said to represent official policy . . . ."  Monell v. Dep't of Soc. Servs. of the City

of New York, 436 U.S. 658, 694 (1978); see also Denno ex rel. Denno v. School

Bd. of Volusia Cnty., 218 F.3d 1267, 1276 (11th Cir. 2000) (citing Monell, 436

U.S. at 694).  Because a county is "liable under section 1983 only for acts for

which the [county] is actually responsible," Marsh v. Butler Cnty., 268 F.3d 1014,

1027 (11th Cir. 2001) (en banc), Storks "must identify a municipal policy or

custom that caused . . . injury." Harvey v. City of Stuart, 296 F. App'x 824, 826 (11th Cir. 2008) (citations and quotations omitted). To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy. Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). A plaintiff must show that the county's custom or practice is "the moving force behind the constitutional violation." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (internal punctuation and citation omitted).

A plaintiff "has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." Grech, 335 F.3d at 1329 (citing Monell, 436 U.S. at 690-91); see also Mandel v. Doe, 888 F.2d 783, 793 (11th Cir. 1989) ("Under this theory of municipal liability, the first step of the inquiry is to identify those individuals whose decisions represent the official policy of the local governmental unit."). To prove § 1983 liability based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express

33

municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law.  St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it. Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479 (11th Cir. 1991).  "Even in the absence of an express policy or custom, a local government body can be held liable 'for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision.'"  Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla., 285 F.3d 962, 968 (11th Cir. 2002) (quoting McMillian v. Johnson, 88 F.3d 1573, 1577 (11th Cir.1996).

Pledger contends that the Court should enter summary judgment for her as to all claims.  Def.'s Mot. at 25.  Storks contends that he "pled a culture of impropriety based upon the admissions of Officer Misty Pledger."  Pl.'s Resp. at 16.  Specifically, he contends that there exits (1) "a widespread practice so permanent and well settled as to constitute a custom," and (2) "the act or decision of a municipal official with final policy making authority that exist relating to the actions of Officer Misty Pledger."  Id. at 17-18.  However, Storks presents no evidence or specific examples of any constitutional violations by other police officers other than his conclusory statement, which leaves just his allegations

34

against Pledger which, even if supported, would not constitute a cognizable claims against the county.  See City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.") (citation and quotation omitted); Grech, 335 F.3d at 1330 n.6 ("A single incident would not be so pervasive as to be a custom or practice.").

Consequently, Pledger's motion for summary judgement as to Storks's federal official capacity claims is **GRANTED**.

### C.    State Law Claims Against Pledger in Her Individual Capacity (Counts Two and Three)

Pledger contends she is entitled to official immunity from all state law claims asserted by Storks against her in her individual capacity.  Def's. Br. at 20-22.  In response, Storks asserts that his claims overcome official immunity.  Pl.'s Resp. at 13-16.

In relevant part, the Georgia Constitution provides:

[A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.  Except as provided in this subparagraph, officers . . .  shall not be subject to suit or liability, and

35

> no judgment shall be entered against them, for the performance or nonperformance of their official functions.

GA. CONST., art. I, § 2, ¶ IX(d) (emphasis added).  "Stated succinctly, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure."  Graham v. Cobb Cnty., 316 Ga. App. 738, 742 (2012).

"Under Georgia law, the decisions of law enforcement officers to investigate, detain, arrest, use force, and charge a suspect with a crime are discretionary functions for purposes of official immunity."  Thomas v. Cobb Cnty., No. 1:05-CV-2977-CAP, 2009 WL 10696736, at *4 (N.D. Ga. Feb. 20, 2009) (citing Tittle v. Corso, 569 S.E.2d 873, 876 (2002); Outlaw v. Nasworthy, 551 S.E.2d 785, 788 (2001); Woodward v. Gray, 527 S.E.2d 595, 600 (2000); Todd v. Kelly, 535 S.E.2d 540, 542 (2000)).  "Thus, the actions taken by [the police detective] in this case were discretionary in nature.  Therefore, in order to pierce [the detective's] official immunity, the plaintiff must demonstrate actual malice." Id. (citing Merrow v. Hawkins, 467 S.E.2d 336, 338 (1996)).

"Unlike qualified immunity under federal law, we must inquire into [the public agent's] subjective intent to determine whether he [or she] has official immunity under Georgia law."  Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007).

36

> Actual malice requires <u>a deliberate intention to do wrong</u> and express malice or malice in fact.  Actual malice does not include implied malice or the reckless disregard for the rights and safety of others.  A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must <u>be the intent to cause the harm suffered by the plaintiffs</u>.  Likewise, "[t]he phrase 'actual intent to cause injury' has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.  This definition of intent contains aspects of malice, perhaps a wicked or evil motive."

<u>Selvy v. Morrison</u>, 292 Ga. App. 702, 704-05 (2008) (emphasis added) (quoting

<u>Kidd v. Coates</u>, 271 Ga. 33 (1999)); <u>see also</u> <u>Adams v. Hazelwood</u>, 271 Ga. 414,

415 (1999) ("Actual malice requires more than harboring bad feelings about

another.  While ill will may be an element of actual malice in many factual

situations, its presence alone cannot pierce official immunity; rather, ill will must

also be combined with the intent to do something wrongful or illegal.").

Storks correctly explains that malice defeats official immunity.  Pl.'s Resp.

at 14.  But then, Storks only summarily states that "Plaintiff has provided evidence

that his complaint is based upon . . . the malicious prosecutorial acts of the Officer

involved," and then further states in conclusory fashion that Pledger's actions

"were malicious in nature."  <u>Id.</u> at 15-16.  Storks provides no factual basis for this

conclusion, and the Court finds none in the record.[6]  Because there is no evidence

---

[6] Storks claim that malice is established by the evidence that Pledger re-wrote the statutory guidelines to arrest Storks is without merit.  Pl.'s Resp. at 19, 28.  As

that Pledger was motivated by personal malice toward Storks, she has not waived

her official immunity.  Marshall v. Browning, 310 Ga. App. 64, 68 (2011)  "Thus,

even after giving [Storks] every benefit of the doubt, we cannot conclude that he

presented evidence that could authorize a finding of actual malice sufficient to

pierce the shield of official immunity."  Mercado v. Swoope, 340 Ga. App. 647,

652 (2017).

Consequently, Pledger's Motion for Summary Judgment the as to the state

law claims (Counts Two and Three) against Defendant in her individual capacity is

**GRANTED**.[7]

### D.    State Law Claims Against Pledger in Her Official Capacity

"Under the Georgia Constitution, the protection of sovereign immunity

extends to the state and all of its departments, including counties, and thus protects

county employees who are sued in their official capacities unless sovereign

---

discussed above, the mistaken inclusion of the child molestation statute instead of
the attempt statute does not invalidate the reality that there was probable cause for
attempt.  Viewed in a light most favorable to Storks, this evidence does not
demonstrate malice because it does not show a deliberate intention to do wrong.
Selvy, 292 Ga. App. at 704-05.

[7] Because the Court is granting Pledger's Motion for Summary Judgment on the
basis of official immunity, the Court need not consider her argument that the state
law claims fail on their merits.  Def.'s Mot. at 22-25.

immunity has been waived." Jobling v. Shelton, 334 Ga. App. 483, 486 (2015) (internal quotation marks and citation omitted); see also Pearce v. Tucker, 299 Ga. 224, 225 n.2 (2016) ("While suits against public employees in their personal capacities involve official immunity, suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity.") (quoting Donaldson v. Dep't of Transp., 262 Ga. 49, 56 (1992)).  "A lawsuit against a [law enforcement officer] in his official capacity is considered a suit against the county, and the [officer] is entitled to assert any defense or immunity that the county could assert, including sovereign immunity."  Strength v. Lovett, 311 Ga. App. 35, 38 (2011).

When the privilege of sovereign immunity is properly invoked, the opposing party has the burden of establishing any waiver thereof.  Fulton-Dekalb Hosp. Authority v. Walker, 216 Ga. App. 786, 788 (1995) ("Sovereign immunity is not an affirmative defense that must be established by the party seeking its protection. Instead, immunity from suit is a privilege . . . and the waiver must be established by the party seeking to benefit from the waiver.") (internal quotations omitted). See also Jobling, 334 Ga. App. at 485-86 ("Any waiver of sovereign immunity must be established by the party seeking to benefit from that waiver.") (internal punctuation and citation omitted).

Storks fails to make any argument that Floyd County waived its sovereign immunity.  See Pl.'s Resp.  Instead Storks recycles his sovereign immunity arguments relating to the federal claims, citing Cuesta, 285 F.3d at 966, once again for support.  Pl.'s Resp. at 22.  However, Cuesta is inapposite because it involved 42 U.S.C. § 1983 claims, rather than state law claims- as are present here.  Because Plaintiff has failed to establish any waiver of sovereign immunity on behalf of Floyd County, Pledger's Motion for Summary Judgment as to the state law claims against Pledger in her official capacity is **GRANTED**.

### E.   Claims against Unidentified Defendants John Does 1-3

With the dismissal of all claims against the only named Defendant, Pledger, only the claims against the unidentified John Does 1-3 remain.  Fictitious-party pleading such as this is generally not permitted in federal court.  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  However, courts "have created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'"  Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).  Storks has not moved to substitute any John Doe for a named party, provided information by which they could be identified, or

described them in any meaningful way.[8]  Accordingly, Storks's claims against the

unidentified John Does will also be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Misty

Pledger's Motion for Summary Judgment [Doc. 20] is **GRANTED** as to all claims

asserted against her in both her individual and official capacities.  It is further

**ORDERED** that John Does 1-3 are **DISMISSED** as parties in this case.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 2nd day of February, 2022.

_____
MARK H. COHEN
United States District Judge

---

[8] In Storks's Brief, he does not even include John Does 1-3 in the caption.  Pl.'s
Resp. at 1.